**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION**

| | |
|---|---|
| FARHAN MOHAMMED,<br><br>Plaintiff,<br><br>v.<br><br>DAVIS COUNTY et al.,<br><br>Defendants. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No. 2:07-CV-637 CW<br><br>District Judge Clark Waddoups<br><br>Magistrate Judge Paul Warner |

Plaintiff, Farhan Mohammed, originally proceeding pro se, filed this civil rights suit

under 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C.A. § 1983

(West 2010); 42 U.S.C. § 2000e (West 2010). Plaintiff's original Complaint named as

defendants Davis County and Joshua Boucher, a Deputy with the Davis County Sheriff's Office,

in his individual capacity. On August 26, 2008, the Court dismissed Plaintiff's Title VII claims

and dismissed Davis County as a defendant, leaving only the Section 1983 claims against

Boucher remaining. On July 17, 2009, after retaining counsel, Plaintiff filed a Second Amended

Complaint against Deputy Boucher asserting claims of unreasonable search and seizure under the

Fourth Amendment and denial of equal protection under the Fourteenth Amendment. Before the

Court is Defendant Joshua Boucher's Motion for Summary Judgment based on qualified

immunity.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Cellotex v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). Thus, Rule 56(a) of the Federal Rules of Civil Procedure allows a party to move "with or without supporting affidavits for a summary judgment in the party's favor upon all or any part of [a claim]." Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden of showing "that there is an absence of evidence to support the non-moving party's case." *Cellotex*, 477 U.S. at 325. This burden may be met merely by identifying portions of the record which show an absence of evidence to support an essential element of the opposing party's case. *Johnson v. City of Bountiful*, 996 F. Supp 1100, 1102 (D. Utah 1998).

Once the moving party satisfies its initial burden "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element." *Id.* Federal Rule of Civil Procedure 56(e) requires a nonmovant "that would bear the burden of persuasion at trial" to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998). The specific facts put forth by the nonmovant

"must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." *Thomas v. Wichita Coca-Cola Bottling*, 968 F.2d 1022, 1024 (10th Cir. 1992). Mere allegations and references to the pleadings will not suffice. However, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).

## MATERIAL FACTS[1]

On February 1, 2007, at approximately 3:00 p.m., Plaintiff was driving his Mitsubishi 3000GT southbound on I-15 in Davis County near Farmington City. The interstate was not congested and traffic was flowing freely. Deputy Boucher was traveling ahead of Plaintiff in the far right hand lane driving a marked Davis County Sheriff's Office sport-utility vehicle. Driving in the center lane of the three-lane freeway, Plaintiff passed by Boucher's patrol car on the left. As he passed, Plaintiff made eye contact with Boucher, who was wearing his uniform. After also passing a van directly ahead of Boucher, Plaintiff moved into the right hand lane to avoid a slower-moving pickup truck traveling in the center lane. Immediately after Plaintiff passed by, Boucher moved into the center lane and accelerated to catch up with Plaintiff. After getting behind Plaintiff in the right hand lane, Boucher activated his radar and measured Plaintiff's speed at 85 miles per hour (m.p.h.). Deputy Boucher then activated his emergency lights and pulled Plaintiff over.

After notifying dispatch, Boucher approached Plaintiff's vehicle and stated that he had

---

[1]   The material facts are drawn from the parties' memoranda and supporting exhibits and are construed in the light most favorable to Plaintiff, the non-moving party.

stopped Plaintiff for speeding. Boucher explained that the speed limit on that section of the interstate was 65 m.p.h. and that he clocked Plaintiff's vehicle at 85 m.p.h.. Boucher then requested Plaintiff's driver's license and registration before returning to his patrol car to issue a citation.

Approximately six minutes later, Boucher returned to Plaintiff's vehicle with the citation. Boucher explained that although he clocked Plaintiff at 85 m.p.h. he issued the citation for only 9 m.p.h. over the speed limit. Boucher also explained how to resolve the citation and who to call if Plaintiff had any questions. Boucher then handed the citation booklet to Plaintiff and instructed Plaintiff to sign the citation, retain a copy for himself, remove his driver's license, and then return the booklet. Boucher also explained that the signature was not an admission of guilt, but merely a promise to resolve the citation. Plaintiff took the citation booklet from Boucher but, before signing the citation, began asking Boucher questions about driving regulations and the effect the citation might have on a previous plea in abeyance. Without fully answering Plaintiff's questions Boucher stated that he was not going to argue with Plaintiff and that if Plaintiff refused to sign the citation he would be arrested. Plaintiff responded that he was not arguing, but just wanted further clarification. Boucher stated that he was not going to discuss the matter any further and again explained that if Plaintiff did not sign the citation he would be arrested. Plaintiff said that he would sign the ticket, but that he just wanted further clarification and believed Boucher was being unreasonable. At that point Boucher took the citation booklet away from Plaintiff and told him to step out of the car.

After exiting his vehicle Plaintiff was handcuffed and placed under arrest for speeding.

As Boucher was handcuffing Plaintiff, a Utah Highway Patrol officer, Trooper Sean McWilliams, happened upon the scene and stopped to offer assistance. Boucher asked McWilliams to watch Plaintiff while he cleared out the backseat of his patrol car. Plaintiff was then placed in the patrol car and Deputy Boucher called on the radio for a tow truck to impound Plaintiff's vehicle. Boucher and McWilliams then conducted an inventory search of Plaintiff's car while awaiting the tow truck. During this process Boucher searched a backpack located on the backseat of Plaintiff's car which contained a laptop computer.

Plaintiff was subsequently transported to the Davis County Sheriff's Jail where he was booked for speeding. As part of the booking process, Plaintiff was forced to partially disrobe and was searched. While at the jail Deputy Boucher prepared a revised citation charging Plaintiff with "Speeding" under Utah Code Section 41-6a-601 and "Refusal to sign citation" under Utah Code Section 77-7-24. On the suspect's signature line Boucher wrote "Refused." (Reply to Resp. Opp. Mem. Supp Joshua Boucher's Mot. Dism. (Dkt. No. 43) Ex. A.) Plaintiff was released on bail later that afternoon.

Immediately following his release from jail Plaintiff went to the Davis County Sheriff's Office to lodge a complaint against Deputy Boucher. Plaintiff spoke to Captain Randy Slagowski and explained that he believed he was treated unfairly based on his race or religion. Slagowski attempted to resolve Plaintiff's concerns informally but told Plaintiff that he must file a written complaint to initiate a formal investigation. The following day Plaintiff filed a written complaint accusing Deputy Boucher of discrimination. Slagowski conducted an investigation and issued a written report on February 21, 2007, finding no support for Plaintiff's allegations

and stating that Plaintiff's treatment was not atypical.

On April 18, 2007, Plaintiff appeared in the Davis County Justice Court for a bench trial on the speeding charge.[2]  Plaintiff was convicted and sentenced to fifteen days jail and $157 fine. The court suspended the jail term based on full and prompt payment of the fine.  Plaintiff subsequently appealed the conviction to the Utah Second District Court.  On June 19, 2007, the case was dismissed based on Deputy Boucher's failure to appear.

## BOUCHER'S MOTION FOR SUMMARY JUDGMENT

Plaintiff's Second Amended Complaint asserts the following claims:[3] 1) Unreasonable seizure under the Fourth Amendment based on Boucher's arrest of Plaintiff after issuing and delivering to him a speeding citation; 2) Unreasonable search and seizure of Plaintiff's vehicle and possessions in violation of the Fourth Amendment; and, 3) Denial of equal protection in violation of the Fourteenth Amendment based on Boucher's alleged racial and religious discrimination. Plaintiff seeks damages, costs and injunctive relief from Defendant in his individual capacity.[4]

---

[2]   According to the Justice Court docket, on February 6, 2007, the court sent a copy of the citation to the county attorney for clarification of the charge of "Refusal to sign citation." The county attorney responded the following day stating, "[C]an only cite for speeding.  [T]he other charge refers only to law enforcement and no penalties for citizens."  (Liuzzi Decl. (Dkt. No. 87) Ex. A at 2.)

[3]   Although the Second Amended Complaint also seeks damages for medical costs, it does not specifically assert a claim of excessive force, nor does it allege sufficient facts to support such a claim.

[4]   Plaintiff's Second Amended Complaint purports to sue Boucher in his individual and official capacities.  However, in its order granting Plaintiff leave to amend his complaint, the Court held that Plaintiff could only amend his complaint to clarify his claims against Boucher in his individual capacity.  The Court found that allowing amendment to include official capacity

Defendant Boucher moves for summary judgment on the basis of qualified immunity.

**A. Detention and Arrest**

Plaintiff alleges that Boucher violated the Fourth Amendment prohibition on unreasonable seizures both by detaining Plaintiff without probable cause and by arresting Plaintiff after he had already issued him a citation for speeding. Boucher contends that he had reasonable suspicion that Plaintiff was speeding, and that Plaintiff's arrest was reasonable because Utah law gives officers discretion to cite or arrest suspects for speeding. Boucher further contends that Utah law requires a person receiving a citation to sign the citation or else face arrest. Finally, Boucher contends that, even if his arrest of Plaintiff was unlawful, he is entitled to qualified immunity because it would not have been clear to a reasonable officer in his position that his actions were unlawful.

The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated[.]" U.S. Const. amend. IV. It is well settled that a police officer's stop of a vehicle is a "seizure" and therefore subject to Fourth Amendment protections. *See Delaware v. Prouse*, 440 U.S. 648, 653, 99 S. Ct. 1391, 1396 (1979). However, the Fourth Amendment does not prohibit all seizures--only unreasonable ones. *Terry v. Ohio*, 392 U.S. 1, 9, 88 S. Ct. 1868, 1873 (1968). Since a traffic stop is a limited seizure and is more like an investigative detention than a custodial arrest, *United States v. Walker*, 933 F.2d 812, 815 (10th

claims would be unduly prejudicial at that stage of the litigation. (Dkt. no. 65 at 6.)

Cir. 1991) (citing *Berkemer v. McCarthy*, 468 U.S. 420, 439, 104 S. Ct. 3138, 3149,(1984)), courts assess the reasonableness of such a stop under principles governing investigative detentions, as set forth in *Terry*. *Id*. at 815 (citing *United States v. Guzman*, 864 F.2d 1512, 1519 (10th Cir. 1988)). Under *Terry*, the determination of whether a seizure is reasonable involves a two-pronged test: (1) Was the officer's action justified at its inception?; and, (2) Was his action reasonably related in scope to the circumstances which justified the interference in the first place? *Terry*, 392 U.S. at 19-20, 88 S. Ct. at 1879.

### i. Initial Detention

"A traffic stop is justified at its inception if an officer has . . . reasonable articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir.), cert. denied, --- U.S. ----, 129 S. Ct. 2881 (2009). Reasonable suspicion is "something more than an inchoate and unparticularized suspicion or hunch." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581 (1989) (internal quotation marks omitted). In determining reasonableness a court "looks only at whether the stop was 'objectively justified'; the officer's subjective motives are irrelevant." *United States v. Chavez*, 534 F.3d 1338, 1344 (10th Cir.2008), cert. denied, --- U.S. ----, 129 S. Ct. 953 (2009). Finally, the reasonableness of a traffic stop must be determined based on the "totality of the circumstances." *United States v. Cortez-Galaviz*, 495 F.3d 1203, 1205-06 (10th Cir. 2007).

Here, it is clear that Plaintiff's initial detention was justified at its inception because there is ample evidence that Boucher reasonably suspected Plaintiff of speeding. Boucher's sworn

declaration states that after observing Plaintiff pass him on the left at high speed Boucher paced Plaintiff's vehicle and used radar to measure Plaintiff's speed at 85 m.p.h.. Boucher's statement is supported by the dashcam video which shows Boucher traveling at freeway speed as Plaintiff's vehicle quickly passes by going significantly faster than Boucher and the other vehicles in view. Although the dashcam recording does not indicate Boucher's exact speed, given the freely-moving traffic and the relative speed of Plaintiff's vehicle there is little doubt that Plaintiff exceeded the posted speed limit of 65 m.p.h.. Boucher can also be heard on the dashcam video stating that the reason he stopped Plaintiff was that he clocked Plaintiff traveling at 85 m.p.h. in a 65 m.p.h. zone. Although Plaintiff does not concede that he was speeding, and points out that his speeding conviction was ultimately dismissed on appeal, it is clear that Boucher had reasonable articulable suspicion that Plaintiff was speeding. Thus, the Court finds no support for Plaintiff's claim that the initial traffic stop was unreasonable under the Fourth Amendment.

### ii. Arrest: Scope of Interference

The Court now turns to the second prong of the *Terry* analysis: Whether Boucher's actions were reasonably related in scope to the circumstances which justified the traffic stop in the first place? The Supreme Court has held that an investigative detention, such as a traffic stop, "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325 (1983). Thus, "once an officer's purpose in a traffic stop based on probable cause or reasonable suspicion is complete, the officer must let the person go." *U.S. v. Ozbirn*, 189 F.3d 1194, 1199 (10th Cir. 1999). Moreover, the length and scope of a detention for a traffic violation must be "strictly tied to and

justified by" the circumstances which rendered its initiation permissible. *Terry*, 392 U.S. at 19-20, 88 S. Ct. at 1879).

Because Plaintiff was legally detained for speeding, the permissible scope of the detention must be determined based on Utah laws governing speeding violations. Utah Code Section 77-7-2 provides that "[a] peace officer may make an arrest under authority or warrant or may, without warrant, arrest a person (1) for any public offense committed or attempted in the presence of any peace officer." Utah Code Ann. § 77-7-2 (West 2010). Utah law further provides that, in lieu of arrest, a peace officer may issue a citation for certain offenses. Utah Code Section § 77-7-18 states:

> A peace officer, *in lieu of taking a person into custody* . . . may *issue and deliver* a citation requiring any person subject to arrest or prosecution on a misdemeanor or infraction charge to appear at the court of the magistrate before whom the person should be taken pursuant to the law if the person had been arrested.

Utah Code Ann. § 77-7-18 (West 2010)(emphasis added). Section 77-7-20 specifies what information must be included in the citation and also the requirements for handling the citation after issuance:

> **77-7-20. Service of citation on defendant -- Filing in court -- Contents of citations.**
> (1) If a citation is issued pursuant to Section 77-7-18, the peace officer or public official *shall issue one copy to the person cited* and shall within five days file a duplicate copy with the court specified in the citation.
> (2) Each copy of the citation issued under authority of this chapter shall contain:
>     (a) the name of the court before which the person is to appear;
>     (b) the name of the person cited;
>     (c) a brief description of the offense charged;
>     (d) the date, time and place at which the offense is alleged to have occurred;
>     (e) the date on which the citation was issued;
>     (f) the name of the peace officer or public official who issued the citation, and the name of the arresting person if an arrest was made by

a private party and the citation was issued in lieu of taking the arrested person before a magistrate;

(g) the time and date on or before and after which the person is to appear;

(h) the address of the court in which the person is to appear;

(i) a certification above the signature of the officer issuing the citation in substantially the following language: "I certify that a copy of this citation or information (Summons and Complaint) was duly served upon the defendant according to law on the above date and I know or believe and so allege that the above-named defendant did commit the offense herein set forth contrary to law. I further certify that the court to which the defendant has been directed to appear is the proper court pursuant to Section 77-7-21."; and

(j) a notice containing substantially the following language:

READ CAREFULLY

> This citation is not an information and will not be used as an information without your consent. If an information is filed you will be provided a copy by the court. You MUST appear in court on or before the time set in this citation. IF YOU FAIL TO APPEAR, THE COURT MAY ISSUE A WARRANT FOR YOUR ARREST.

Utah Code Ann. § 77-7-20 (West 2010)(emphasis added). The notice required under § 77-7-20(2)(j) is essentially a certificate of service, verifying that the officer served a copy of the citation on the defendant.

Pursuant to Utah Code Section 41-6a-202, speeding in violation of § 41-6a-601 is a public offense classified as a Class C misdemeanor; thus, under § 77-7-18 Deputy Boucher had discretion to either arrest Plaintiff or else "issue and deliver" to Plaintiff a citation requiring him to appear before a magistrate.[5] If Boucher opted for the citation alternative, he was required

---

[5] Despite this clear statutory language, Plaintiff argues that under Utah caselaw arrests for speeding are deemed unreasonable absent some additional offense. Plaintiff's only support for this contention is a strained reading of *State v. Parker*, 834 P.2d 592 (Utah Ct. App. 1992),

under § 77-7-20 to deliver a copy of the citation to Plaintiff and then sign the certificate of service himself.

The evidence clearly shows that Deputy Boucher decided to cite Plaintiff for speeding rather than arrest him. After checking Plaintiff's licence and registration and finding nothing amiss, Boucher issued the citation and delivered it to Plaintiff. Boucher then instructed Plaintiff to sign the form, retain a copy for himself, and return the additional copies. It was only after Plaintiff failed to sign the ticket immediately that Boucher took the citation away from Plaintiff and decided to arrest him. Thus, the question presented here is whether, after already issuing and delivering a speeding citation to Plaintiff under § 77-7-18, it was reasonable for Boucher to arrest Plaintiff for refusing to sign the citation.

Boucher contends that the arrest was justified because Utah law requires a person detained and cited for speeding to sign the citation before being allowed to go on his way. The only legal support offered for this contention is Utah Code Section 77-7-24, which states:

> **77-7-24. Notice to appear in court -- Contents -- Promise to comply -- Signing -- Release from custody -- Official misconduct.**
> (1) If a *person who is arrested* for a violation of Title 41, Chapter 6a, Traffic Code, that is punishable as a misdemeanor is *immediately taken before a magistrate* as provided under Section 77-7-23, the peace officer shall prepare, in triplicate or more copies, a *written notice to appear in court* containing:
>> (a) the name and address of the person;
>> (b) the number, if any, of the person's driver license;

---

which the court has thoroughly reviewed and found not to be on point. Moreover, Plaintiff's argument directly contradicts more recent Utah and Federal caselaw upholding arrests for speeding under Utah law. *See United States v. Lugo*, 170 F.3d 996 (10th Cir. 1999); *State v. Harmon*, 910 P.2d 1196, 1201 (Utah 1996); *State v. Martinez*, 131 P.3d 879 (Utah Ct. App. 2006).

(c) the license plate number of the person's vehicle;

(d) the offense charged; and

(e) the time and place the person shall appear in court.

(2) The time specified in the notice to appear must be at least five days after the arrest of the person unless the person demands an earlier hearing.

(3) The place specified in the notice to appear shall be made before a magistrate of competent jurisdiction in the county in which the alleged violation occurred.

(4) (a) *In order to secure release* as provided in this section, the *arrested person* shall promise to appear in court *by signing* at least one copy of the written notice prepared by the arresting officer.

(b) The arresting peace officer shall immediately:

(i) deliver a copy of the notice to the person promising to appear; and

(ii) release the person arrested from custody.

(5) A peace officer violating any of the provisions of this section shall be:

(a) guilty of misconduct in office; and

(b) subject to removal from office.

Utah Code Ann. § 77-7-24 (West 2010)(emphasis added).

By its clear language, § 77-7-24 applies only to "a person who is arrested . . . [and] immediately taken before a magistrate under Section 77-7-23." Utah Code Section 77-7-1 defines "arrest" as "an actual restraint of the *person* arrested or submission to custody." Utah Code Ann. § 77-7-1 (West 2010) (emphasis added). Thus, although § 77-7-24(4)(a) does include a signing requirement; that requirement applies only to "secure release" of an "arrested person," not to terminate the detention of a person who is given a citation in lieu of arrest under § 77-7-18.[6] When a person is cited under § 77-7-18 the citing officer need only deliver the citation and sign the certificate of service himself as required under § 77-7-20.

---

[6] As previously noted, the Davis County Attorney's office also interpreted § 77-7-24 to include "no penalties for citizens" for refusal to sign a citation and declined to pursue any additional charges against Plaintiff on that ground.

Applying the above statutory framework the Court concludes that Boucher's actions subsequent to delivering the citation to Plaintiff were not reasonably related in scope to the circumstances which justified the traffic stop. Once Boucher issued and delivered the citation to Plaintiff, the purpose for the traffic stop was complete, therefore, it was not reasonable to prolong Plaintiff's detention by insisting that he sign the citation, nor was it reasonable to arrest Plaintiff for failure to promptly do so.[7] Instead, Boucher should have simply given Plaintiff a copy of the citation, signed the certificate of service himself, and allowed Plaintiff to go on his way.[8] Because Boucher's decision to further detain and then arrest Plaintiff was not reasonably related to the purpose of the traffic stop, the arrest was unreasonable under the Fourth Amendment.

### B. Search and Seizure of Vehicle and Belongings

The Supreme Court has held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search

---

[7] Such needless extension and escalation of investigatory detentions can potentially lead to more serious constitutional violations and place both suspects and officers in grave danger. The court is aware of a case in this District where a suspect's refusal to sign a traffic citation resulted in his being tasered on the side of the highway. See *Massey v. Gardner*, case no. 2:08-CV-54-DB (filed Jan. 18, 2008). The suspect filed suit in this court alleging violations of his civil rights. (*Massey*, doc. no. 2.) According to court records and a Press Release by the Utah Attorney General's Office, that suit was ultimately settled for $40,000. (*Massey*, doc. no.7); http://attorneygeneral.utah.gov/783.html)

[8] The feasibility of simply delivering the citation without requiring a signature is amply demonstrated by the fact that Plaintiff was never required to sign the amended citation prepared by Boucher at the jail. According to his deposition testimony, Boucher never gave Plaintiff a copy of the amended citation, instead, he simply wrote "Refused" on the suspect's signature line, signed the certificate of service himself, and left a copy with the jail to deliver to Plaintiff. Boucher could have easily followed similar procedures at the scene of the traffic stop.

the passenger compartment of that automobile" and "examine the contents of any containers found within the passenger compartment." *New York v. Belton*, 453 U.S. 454, 460 (1981). However, the scope of a vehicle search incident to the arrest of an occupant is not without limits. The Tenth Circuit has explained that "[b]ecause searches incident to arrest are meant to discover hidden weapons and to prevent the suspect from destroying evidence, a search incident to arrest may extend only to the area within the suspect's immediate control, as that is the only area from which the suspect could draw a weapon or damage evidence." *U.S. v. Edwards*, 242 F.3d 928, 937 (10ᵗʰ Cir. 2001). Thus, "if the police arrest the occupant of a car they may also search the passenger compartment of the vehicle, but they may not search other areas that are outside the suspect's immediate control or 'grab' space." *Id*.

In *Arizona v. Gant*, --- U.S. ----, ----, 129 S. Ct. 1710, 1716 (2009), the Supreme Court narrowed the scope of the search-incident-to-arrest exception by holding that such searches "must be strictly tied to and justified by the circumstances which rendered [their] initiation permissible." *Id*. at 1716 (quoting *Chimel v. California*, 395 U.S. 752, 763, 89 S. Ct. 2034 (1969). Thus, under *Gant*, "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment *at the time of the search* or it is reasonable to believe the vehicle contains *evidence of the offense of arrest*." *Gant*, 129 S. Ct. at 1723 (emphasis added). "In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence." *Gant*, 129 S. Ct. at 1719.

Prior to *Gant*, under Tenth Circuit precedent, an officer was permitted to search the passenger compartment of a vehicle upon the arrest of a recent occupant, regardless of whether the arrestee was already restrained and regardless of the nature of the offense for which he was arrested. *See United States v. McCane*, 573 F.3d 1037, 1039 (10th Cir. 2009). Because the search here occurred more than two years before the Supreme Court's decision in *Gant*, the pre-*Gant* standard applies here.

Boucher asserts that he never actually searched Plaintiff's vehicle and that me merely took an inventory of its contents in preparation for impoundment. Aside from Deputy Boucher and Trooper McWilliams' testimony, however, there is no evidence that a proper inventory was actually performed. Viewing the facts in the light most favorable to Plaintiff, the Court must assume that the passenger compartment and its contents were searched.

Because the scope of the search here did not exceed the permissible limits of a pre-*Gant* vehicle search incident to arrest, the validity of the search and seizure of Plaintiff's vehicle and belongings turns entirely on the validity of Plaintiff's arrest. Although the Court has already found that Plaintiff's arrest was unreasonable, it must still address whether Boucher is entitled to qualified immunity. If Boucher is entitled to qualified immunity on the arrest claim he would also be immune from damages for the search incident to arrest.

### C. Qualified Immunity

#### i. Legal Standard

The doctrine of qualified immunity shields government officials from individual liability

for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go trial." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001)(*quoting Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Thus, immunity questions should be addressed at the earliest possible stage in litigation. *Id.* (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)(per curiam)).

Given the underlying purposes of qualified immunity, courts address qualified immunity questions differently from other summary judgment decisions. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). By asserting qualified immunity a defendant places a "heavy two-part burden" upon the plaintiff. *Id.* The plaintiff must first establish that the facts, taken in the light most favorable to him, show that the officer's conduct violated a constitutional or statutory right. *Saucier*, 533 U.S. at 201. Once this requirement is satisfied, the plaintiff must then show that the right in question was clearly established at the time of the alleged violation. *Id.* The determination whether a right is clearly established must be made "in the light of the specific context of the case, not as a broad general proposition." *Id.* And, "the relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. If the plaintiff cannot satisfy either part of this "heavy two-part burden," the court must grant the defendant qualified immunity and dismiss the deficient claims.

### ii. Boucher's Entitlement to Qualified Immunity

Having already determined that Plaintiff's arrest was unreasonable under the Fourth Amendment, the Court now turns to the second prong of the qualified immunity analysis: Whether the rights at issue here were clearly established at the time the violations occurred.

The Supreme Court has held that in Fourth Amendment search and seizure cases qualified immunity provides officers an extra level of protection--"in addition to the deference officers receive on the underlying constitutional claim"--by allowing immunity from suit if the relevant legal boundaries were not clearly established at the time of the alleged violation. *Saucier*, 533 U.S. 206. In such cases, to overcome qualified immunity a plaintiff must not only show that the officer's actions were "objectively unreasonable," but also that the officer's mistaken belief as to the legality of his actions was itself unreasonable. *Id*. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* at 202. Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096 (1986).

Here, although Boucher's actions were unlawful, there is ample evidence that Boucher reasonably believed he had authority to arrest Plaintiff for refusal to sign the citation. As previously discussed, Utah law does not require a person cited for speeding to sign a citation before being permitted to go on his way. However, several factors reasonably led Boucher to mistakenly believe such a requirement existed. First, the "Uniform Citation or Information and

Notice to Appear" form used by Boucher, which was issued by the Davis County Sheriff's Department, prominently includes a signature line for the person receiving the citation. Above that signature line the form states: "WITHOUT ADMITTING GUILT, I PROMISE TO APPEAR AS DIRECTED HEREIN." The presence and prominence of this language on the official citation form undoubtedly gave Boucher the impression that suspects are required to sign the citation form before being released.

Second, the Utah statutory framework, set forth above, is not a model of clarity on this point. As previously explained, Utah Code Section 77-7-24 does include a signature requirement for suspects who are arrested and taken before a magistrate, however, that requirement does not apply to suspects who are merely detained and issued a citation. Utah Code Ann. § 77-7-24 (West 2010). Given this lack of clarity, it appears that Defendant Boucher reasonably misinterpreted the signing requirement to apply to detainees. Boucher's reliance on the statute is apparent from the revised citation where he erroneously listed "Refusal to sign citation 77-7-24" as a separate offense.

Finally, at the time of this incident there was no previous Utah or federal caselaw addressing the issue of a signature requirement for persons cited for speeding pursuant to Utah Code Section 77-7-18.[9] Although existing caselaw clearly affirmed a peace officer's authority

---

[9] Officer Boucher may also have been aware of other instances in Utah where speeding suspects were arrested for refusal to sign a citation. Although the *Massey* incident cited in Footnote 6, which garnered substantial media coverage, occurred nearly nine months after the incident here, these two incidents together show a common misperception among Utah peace officers regarding the signing requirement. This misperception was undoubtedly reinforced by

under Utah law to arrest a suspect for speeding, none of those cases addressed the legality of arresting a suspect who had already been issued and served with a speeding citation.

Based on these factors, and the absence of any evidence that Boucher knew he was acting unlawfully, the Court finds that Defendant Boucher reasonably misapprehended the law concerning the signing requirement. Moreover, at the time of this incident it would not have been clear to a reasonable officer in Boucher's position that it was clearly unlawful to arrest a speeding suspect for refusal to sign a citation. Thus, the Court concludes that Defendant Boucher is entitled to qualified immunity from Plaintiff's claims for damages stemming from Plaintiff's unlawful arrest and the incident search of his vehicle and belongings.

**D. Equal Protection**

"[T]he Constitution prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769 (1996). A defendant "challenging alleged racial discrimination in traffic stops and arrests must present evidence from which a jury could reasonably infer that the law enforcement officials involved were motivated by a discriminatory purpose and their actions had a discriminatory effect." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003). Though the discriminatory purpose need not be the only purpose, it "must be a motivating factor in the decision." *Villanueva v. Carere*, 85 F.3d 481, 485 (10th Cir. 1996).

Plaintiff points to several factors as support for the contention that Boucher's decision to

_____

the citation form and statutory language factors discussed herein.

arrest Plaintiff was motivated by racial and/or religious discrimination. First, Plaintiff asserts that Boucher's tone and demeanor changed significantly after Boucher obtained Plaintiff's driver's license, which showed that Plaintiff's last name was Mohammed. Second, Plaintiff contends that before he had even filed a discrimination complaint, Boucher contacted Trooper McWilliams to warn him that Plaintiff was alleging discrimination and to tell McWilliams to write an incident report. Finally, Plaintiff asserts that the rarity of arrests for speeding--absent some additional offense--shows that Boucher's decision must have been motivated by some other factor, such as Plaintiff's race or religion.

Plaintiff has not mustered sufficient evidence to support the inference that Boucher's actions were motivated by a discriminatory purpose. Plaintiff's argument regarding Boucher's tone and demeanor is not supported by the record. The dashcam video clearly shows that Boucher maintained a professional and courteous demeanor even after issuing the citation. Boucher can be clearly seen and heard on the video explaining the citation to Plaintiff in a calm and courteous manner. Although the video recording cuts off before Plaintiff's arrest, it does not show a significant change in Boucher's demeanor immediately after checking Plaintiff's driver's licence or issuing the citation. In fact, Boucher's demeanor only began to change after Plaintiff resisted signing the citation and began repeatedly asking questions.

Boucher's statements to Trooper McWilliams also fail to support an inference of discrimination. Plaintiff essentially argues that Boucher's apparent efforts to head off a discrimination claim are evidence of a guilty conscience. This argument is unpersuasive.

Boucher was obviously aware of Plaintiff's dissatisfaction with the outcome of the incident before Plaintiff filed his discrimination complaint; thus, even if Boucher were innocent he could have easily surmised that Plaintiff might allege discrimination given his minority racial and/or religious background.  Merely suspecting that an obviously disgruntled person from a minority racial or religious background might make accusations of discrimination is not itself evidence of discrimination.  Moreover, Boucher's request that Trooper McWilliams write an incident report just as readily supports an inference of innocence as of guilt.  Not only does McWilliams' incident report offer no support for a charge of discrimination, there is no evidence that Boucher asked McWilliams to lie or to omit any information.  McWilliams' deposition testimony also categorically denies that Boucher made any racial or ethic slurs or otherwise showed signs of a discriminatory purpose.  Thus, the mere fact that Boucher took actions to protect himself against a discrimination complaint does not support an inference that discrimination actually occurred.

Finally, the rarity of arrests for speeding--or for failure to sign a speeding citation--does not support an inference of discrimination.  Although Plaintiff has clearly shown that his arrest was unusual, he has not presented any evidence that it was motivated by discrimination on the basis of race, color or religion.  Instead, the record shows that even after realizing Plaintiff's minority status Boucher still had every intention to simply cite Plaintiff and allow him to go on his way; it was only after Plaintiff failed to sign the citation immediately that Boucher chose to arrest him.  While Plaintiff's failure to promptly sign the citation was not a proper basis for making an arrest, there is no evidence that Boucher would have treated a non-minority in

Plaintiff's position any differently.[10]

In sum, the Court concludes that Plaintiff's discrimination arguments, either taken alone or in combination, are not sufficient to support a reasonable inference that Boucher's actions were motivated by a discriminatory purpose. Thus, Boucher is entitled to summary judgment on Plaintiff's equal protection claim.

### E. Official Capacity Claim

The Supreme Court has long recognized that, "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105 (quoting *Monell*, 436 U.S. at 690 n. 55, 98 S. Ct. 2018). Consequently, in an official capacity suit, the plaintiff must be able to show that the policy or custom of the municipality "played a role in the violation of federal law." *Id.* at 166, 105 S. Ct. 3099.

The Court previously ruled that Plaintiff's complaint did not allege sufficient facts to state a claim against Boucher in his official capacity and that amendment of the pleadings to include such a claim would be unduly prejudicial to defendants. (Doc. 65.) Although Plaintiff's Second Amended Complaint purports to sue Defendant Boucher in his official capacity, that claim contravenes the Court's earlier order and is not cognizable.

_____

[10] For instance, there is no evidence that Boucher made racial or religious comments, nor is there any evidence that Boucher had a prior history of racial or religious discrimination.

**ORDER**

Based on the foregoing analysis, **IT IS HEREBY ORDERED** that

Defendant Joshua Boucher's Motion for Summary Judgment (Dkt. No. 85) is **GRANTED**.

DATED this 7th day of January, 2011.

BY THE COURT:

_____

CLARK WADDOUPS
United States District Judge